UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BOARD OF TRUSTEES, IN THEIR CAPACITIES AS TRUSTEES OF THE LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> STEVEN SCOTT SLAUSON, <br><br> Defendant. | Case No. 20-cv-05416-DMR <br><br> **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Plaintiffs Boards of Trustees for the Laborers Health and Welfare Trust Fund for Northern California, Laborers Pension Trust Fund for Northern California, Laborers Vacation-Holiday Trust Fund for Northern California, and Laborers Training and Retraining Trust Fund for Northern California filed the complaint alleging that Defendant Steven Scott Slauson, individually and dba Triple S Electric Co. ("Triple S"), breached the terms of a collective bargaining agreement in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, by failing to pay employee fringe benefit contributions, liquidated damages, interest, and audit fees.

The court held a bench trial.[1] Following the trial, the parties submitted proposed findings of fact and conclusions of law. [Docket Nos. 99 (Pls.' Prop. FF/CL), 100 (Def.'s Prop. FF/CL).] Pursuant to Federal Rule of Civil Procedure 52(a), the court makes the following findings of fact and conclusions of law.

---

[1] Transcripts of the proceedings are available at Docket Nos. 94 (Tr. Vol. I, "TTI") and 95 (Tr. Vol. II, "TTII").

## I. FINDINGS OF FACT

1. The Laborers Health and Welfare Trust Fund for Northern California; Laborers Pension Trust Fund for Northern California; Laborers Vacation-Holiday Trust Fund for Northern California; and the Laborers Training and Retraining Trust Fund for Northern California administer contributions from employers on behalf of the Laborers' International Union of North America ("Laborers Union"). TTI 100-01. The Trust Funds are employee benefit plans created by written Trust Agreements subject to and pursuant to section 302 of the LMRA, 29 U.S.C. § 186, and are multi-employer employee benefit plans within the meaning of sections 3, 4 and 502 of ERISA, 29 U.S.C. §§ 1002, 1003 and 1132. Exs. 5 (Trust Agreement, Pension Trust Fund), 6 (Trust Agreement, Health and Welfare Trust Fund), 7 (Trust Agreement, Vacation-Holiday Trust Fund), 8 (Trust Agreement, Training and Retraining Trust Fund).

2. Triple S is a licensed electrical contractor. It is a for-profit entity solely owned by Stephen Scott Slauson. [Docket No. 70 (Jt. Pretrial Statement) at 8-15 (Joint Statement of Undisputed Facts, "JSUF"), 1, 2.] At all times relevant, Triple S was an employer within the meaning of section 3(5) and section 515 of ERISA, 29 U.S.C. §§ 1002(5), 1145, and an employer in an industry affecting commerce within the meaning of section 301 of the LMRA, 29 U.S.C. § 185.

3. On March 21, 2008, Slauson executed a Memorandum Agreement on behalf of Triple S. JSUF 4, Ex. 4 (Memorandum Agreement). The Memorandum Agreement states that it is between "the undersigned individual employer and the Northern California District Council of Laborers for and on behalf of all affiliated Local Unions in the 46 Northern California Counties." Memorandum Agreement. The Memorandum Agreement was signed by Jose A. Moreno on behalf of the Northern California District Council of Laborers ("District Council") and Bruce Wibben on behalf of Laborer's International Union of North America, Local 304 ("Local 304"). Ex. 4.

4. The Memorandum Agreement incorporates the 2006-2010 Laborers' Master Agreement between the Association of Construction Employers and the District Council ("Master

Agreement") by reference. JSUF 4; Memorandum Agreement. Specifically, the Memorandum Agreement states that "the individual employer agrees to comply with all wages, hours, and working conditions set forth in the Laborers' Master Agreement for Northern California by and between the Association of Construction Employers and the Union June 26, 2006 through June 30, 2010 (which agreement is incorporated herein by reference . . . ) . . ." Memorandum Agreement.

5. By executing the Memorandum Agreement, Triple S understood that it agreed to be bound to all the obligations of the Master Agreement and the Trust Agreements and that pursuant to said Agreements, it was required to pay hourly contributions for each hour paid for and/or worked for by its employees that performed work covered under the Master Agreement, including overtime pay, shift pay, and show-up time pay. JSUF 5.

6. Trust Fund contributions or reports that are not paid or postmarked for payment by the 25th day of the month immediately following the month for which the contributions are due are deemed delinquent pursuant to the Trust Agreements. JSUF 12. Pursuant to the Trust Agreements, delinquent contributions are assessed interest at a rate of one and one-half percent (1.5%) per month until receipt of payment and liquidated damages are assessed on delinquent contributions at a flat rate of one hundred fifty dollars ($150.00) per month to reflect the internal administrative costs incurred by the Trust Funds' administrator in monitoring and tracking such late contributions. JSUF 13, 14.

7. The Memorandum Agreement states that it remained "in full force and effect until June 30, 2010, and [] continue[d] thereafter for the term of any future modifications, changes, amendments, supplements, extensions or renewals of or to said Master Agreement . . . negotiated between the parties thereto unless either party to this Memorandum Agreement [gave] written notice to the other of the desire to change or cancel not more than ninety (90) days nor less than sixty (60) days prior to June 30, 2010, or June 30th of any year in which the Master Agreement may terminate." JSUF 6, Ex. 4.

8. Local 304 dispatches construction workers within the jurisdiction of the Master Agreement. JSUF 7. In 2008, Triple S asked Local 304 to dispatch general laborers to a

3

     job in Hayward, California. Local 304 dispatched Rudy Argueta and Renee Hernandez to work as General Laborers (Construction Specialist Group 1) for Triple S in 2008. Triple S paid contributions for Argueta and Hernandez from 2008 to September 2012. JSUF 8-10.

9. Triple S last paid contributions to the Trust Funds for the month of September 2012. JSUF 15.

10. On February 19, 2013 Triple S sent a letter to Fernando Estrada, Business Manager of Local 304 requesting a credit the Trust Funds purportedly owed to Triple S. In the letter, Triple S stated that "Local 304 has 30 days from the receipt of this letter to honor the credit" and that "Triple S will terminate the agreement, if the credit isn't honored . . ." JSUF 18; Ex. 11. Local 304 forwarded the letter to the Trust Funds' Administrator. JSUF 18.

11. February 19 is more than ninety days prior to June 30. JSUF 19.

12. On April 2, 2013, the Accounts Receivable Manager for the Trust Funds' Administrator, the Laborers Funds Administrative Office of Northern California, Inc. ("LFAO") sent a letter to Slauson in response to Triple S's February 19, 2023 letter. The LFAO informed Slauson that no credit was owed to Triple S, and that Triple S had a balance due of for under-paid contributions for the months of April and November 2011. JSUF 20, Ex. H.

13. For the months of October 2012 through October 2013, Triple S submitted Employer Reports of Contributions to the Trust Funds, reporting that no hours were worked by any Laborers during the reported months. JSUF 16. The Trust Funds stopped sending Monthly Contribution Reports after October 2013. JSUF 17.

14. On or about February 24, 2014, the Union's business manager sent a letter to Triple S stating that, according to the Union's records, Defendant was "bound by a memorandum agreement that incorporates the terms of the Laborers Master Agreement 2012-2015." The letter informed Triple S that the Laborers Master Agreement 2012-2015 provided for a $1.60 hourly wage increase effective June 30, 2014, and that for contractors who signed a 2014-2019 Laborers Master Agreement Extension, the hourly wage increase would be only $1.35. The letter invited Triple S to accept the terms of the extension by executing a new

Memorandum Agreement.  JSUF 21.  Triple S did not execute a new Memorandum Agreement.  JSUF 22.

15. On or about December 20, 2017, the Trust Funds notified Triple S that it would conduct an audit to determine if Triple S had properly reported contributions to the Trust Funds for the period 2014 through 2018 (the "Audit Period").  The letter requested that Triple S contact the Trust Fund's field auditor within ten working days to schedule the audit.  JSUF 23, Exs. 9, 13, TTII 252.  This notice resulted in an exchange of communications between the parties that continued through February 2018 regarding Triple S's status as signatory to the Master Agreement and Memorandum Agreement.  The Trust Funds disagreed with Triple S's position that it had timely terminated the Master and/or Memorandum Agreements.  JSUF 24, Exs. 14, 15, 16, 17.  Additional communications with Triple S's counsel continued through October 2018, after which the parties reached an agreement whereby Triple S agreed to submit to an audit, expressly reserving the right to contest the Trust Fund's right to conduct the audit.  JSUF 25, Exs. T, U, V, W, X, Y.

16. The Trust Funds provided a complete list of documents needed for the audit in December 2018, which Triple S provided.  The Trust Funds' auditors reviewed the documents at Triple S's counsel's office in December 2018.  The Trust Funds requested additional documents from February 2018 to October 2019 to complete the audit.  JSUF 26, Ex. AA.

17. The Trust Funds completed an audit covering the Audit Period.  Ex. 9, TTI 117-18.  Argueta and Hernandez both worked for Triple S during the Audit Period.  JSUF 11.

18.  Plaintiffs filed this action on August 5, 2020.  JSUF 27.

## II. CONCLUSIONS OF LAW

Plaintiffs seek employee fringe benefit contributions and associated charges that they claim are due under the 2014-2019 Master Agreement for Argueta and Hernandez's work for Triple S during the Audit Period (2014 through 2018).  *See* Pls.' Prop. FF/CL 14 ¶ 18 (citing Ex. 2, 2014-2019 AGC/Laborers Master Agreement).  Plaintiffs' theory is that by signing the 2008 Memorandum Agreement, Triple S became obligated to pay contributions under the 2006-2010 Master Agreement and subsequent Master Agreements, including the 2014-2019 Master

5

Agreement. They dispute that Triple S timely or properly terminated the Memorandum Agreement. *See* Pls.' Prop. FF/CL 10 ¶ 4; 12 ¶ 9.

"ERISA requires employers to contribute to employee benefit plans in accordance with the terms of collectively bargained agreements." *Trs. of Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc.*, 572 F.3d 771, 774 (9th Cir. 2009) (citing 29 U.S.C. § 1145[2]). To succeed on their ERISA claim under 29 U.S.C. § 1145, Plaintiffs must show: "(1) the trust fund is a multi-employer plan as defined by 29 U.S.C. § 1002(37); (2) the defendant is an employer obligated to contribute under the plan's terms; and (3) the defendant failed to contribute in accordance with the plan." *Bd. of Tr. of the Sheet Metal Workers Health Care Plan of N. Cal. v. Gervasio Env't Sys.*, No. C03-04858-WHA, 2004 WL 1465719, at *2 (N.D. Cal. May 21, 2004). The first element is not at issue; rather, the parties' dispute centers on whether Triple S was obligated to pay contributions under the 2014-2019 Master Agreement and whether it failed to contribute in accordance with that agreement.

The court concludes that Plaintiffs did not meet their burden to establish that Triple S was required to pay contributions for work performed pursuant to the 2014-2019 Master Agreement. Slauson executed the Memorandum Agreement on behalf of Triple S in 2008. JSUF 4. The Memorandum Agreement expressly incorporates the 2006-2010 Laborers' Master Agreement between the Association of Construction Employers ("ACE") and the District Council by reference. JSUF 4; Memorandum Agreement. The excerpts of the 2006-2010 Master Agreement in evidence state that the agreement was "made and entered" on June 26, 2006 and that it was effective from June 26, 2006 through June 30, 2010. Ex. D.[3] Defendant does not dispute that "[b]y executing the Memorandum Agreement, Triple S understood that it agreed to be bound to all the obligations of the [2006-2010] Master Agreement and the Trust Agreement and that pursuant to said Agreements, it was required to pay hourly contributions for each hour paid for and/or

---

[2] 29 U.S.C. § 1145 states, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

[3] Neither side submitted the full 2006-2010 Master Agreement in evidence at trial.

6

1    worked for by its employees that performed work covered under the Master Agreement, including
2    overtime pay, shift pay, and show-up time pay." JSUF 5. David Thomas, assistant to the District
3    Council's business manager, testified that "when an employer signs a Memorandum Agreement . .
4    . [i]t binds them to the current Laborer's Master Agreement," and that in this case, the Master
5    Agreement in effect at the time Triple S signed the Memorandum Agreement was the 2006-2010
6    Master Agreement. TTI 58-59, 66.

7    Thomas further testified that an employer does not need to be a member of an employer's
8    association such as ACE or Associated General Contractors of California, Inc. ("AGC") to
9    become a signatory to a memorandum agreement negotiated between the union and the
10   employer's association. Independent employers may also bind themselves to a master agreement.
11   Thomas explained that an employer may decide not to join such an association to avoid paying it
12   "an hourly amount for every employee they have on the job," although they "don't get the
13   expertise" of the association and "don't have bargaining rights when [the union and association]
14   actually negotiate the agreement because they're not a member [of the association]." TTI 67.

15   The Memorandum Agreement contains a provision specifying the period of time it governs
16   the parties' relationship and obligations and states that this period is subject to renewal. The
17   Memorandum Agreement provides that "this Agreement shall remain in full force and effect until
18   June 30, 2010, and shall continue thereafter for the term of any future modifications, changes,
19   amendments, supplements, extensions or renewals of or to [the 2006-2010] Master Agreement
20   *which may be negotiated between the parties thereto* unless either party to this Memorandum
21   Agreement gives written notice to the other . . . " JSUF 6, Memorandum Agreement (emphasis
22   added). Based on the plain language of this provision, the term "the parties thereto" refers to the
23   parties to the 2006-2010 Master Agreement, which were ACE and the District Council. *See* Ex. D
24   (Excerpts of 2006-2010 Master Agreement) at 1. In other words, the Memorandum Agreement
25   was effective from March 21, 2008, the day it was executed, until June 30, 2010, and continued
26   for the term of any extensions of the 2006-2010 Master Agreement that were negotiated by ACE
27   and the District Council.

28   Although Plaintiffs contend that the 2014-2019 Master Agreement is a successor to the

7

2006-2010 Master Agreement, they did not present evidence that the 2014-2019 Master Agreement was "negotiated between" ACE and the District Council as required by the Memorandum Agreement.  Instead, the 2014-2019 Master Agreement states that it is "between the Associated General Contractors of California, Inc. and the Northern California District Council of Laborers of the Laborers' International Union of North America."  Ex. 2 at 1.  The 2014-2019 Master Agreement does not identify ACE as a party.[4]  Therefore, the 2014-2019 Master Agreement was not a "modification[ ], change[ ], amendment[ ], supplement[ ], extension[ ] or renewal[ ] of or to [the 2006-2010] Master Agreement."  *See* Memorandum Agreement.

Additionally, the 2014-2019 Master Agreement states that it "modifie[s], amend[s] and chang[es]" several enumerated prior agreements, but it does not list any agreement dated June 26, 2006, the date of the 2006-2010 Master Agreement.  *See* Ex. 2 at 1.

Plaintiffs did not present evidence explaining the connection between the 2006-2010 Master Agreement between ACE and the District Council and the 2014-2019 Master Agreement between AGC and the District Council.  They also did not present evidence supporting their claim that the 2014-2019 Master Agreement is a modification of or successor to the 2006-2010 Master Agreement, or evidence that supports that Triple S otherwise agreed to be bound by the 2014-2019 Master Agreement.  Accordingly, Plaintiffs did not establish that Triple S was obligated to make employee contributions for work covered by the 2014-2019 Master Agreement between AGC and the District Council and did not establish a violation of 29 U.S.C. § 1145.

//
//
//
//
//

---

[4] Similarly, the 2012-2015 Master Agreement states that it is between the "Associated General Contractors of California, Inc." and "the Northern California District Council of Laborers of the Laborers' International Union of North America."  Ex. 1 at 1.  ACE is not listed as a party to the agreement.

8

### III. CONCLUSION

In summary, Plaintiffs did not prevail on their claim for delinquent contributions under 29 U.S.C. § 1145. Judgment is granted to Defendant on that claim. Defendant's request for attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1) is denied.

**IT IS SO ORDERED.**

Dated: March 25, 2024



Donna M. Ryu
Chief Magistrate Judge